filed no notice of a mechanic's lien and asserts no right under the mechanic's lien law, the court was without authority, by virtue of the provisions of that law, to interfere with the notices which it gave the comptroller. There being no other authority for a summary application to the court in the premises, the application should have been denied.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements to each appellant, and motion granted, with $10 costs to the Fitzgibbons Boiler Company. All concur.

BADGER v. HAMILTON FIRE INSURANCE CO.

(Supreme Court, Appellate Division, Second Department.  December 10, 1909.)

INSURANCE (§ 336*)—FIRE POLICIES—CONSTRUCTION.

> A fire policy issued by H. stipulated that if, at the time of loss, there should be any other insurance on the property, subject to the provisions limiting liability thereon, H. should be entitled to the benefit thereof. At the time of the loss there was other insurance; Y. policy stipulating that it was warranted at not less gross rate of premium and on the same terms as Z. policy. The gross rate of premiums of the H. and Y. policies was 5½ per cent., while the rate of the Z. policy was 8 per cent. Held, that the H. policy referred to policies existing at the time of the loss, without reference to the date of their issue, and the stipulation therein for the benefit of the terms of any other existing insurance at the time of loss imparted into the H. policy the warranty of the Y. policy that it was at the same gross rate of premium, etc., as the Z. policy, which was a condition which, if broken, left the H. policy void.

> [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 336.*]

Appeal from Special Term, Kings County.

Action by William O. Badger against the Hamilton Fire Insurance Company. From an interlocutory judgment overruling a demurrer to the answer, plaintiff appeals. Affirmed.

The following is the opinion of Mr. Justice Thomas at Special Term:

This action is to recover upon a contract of insurance, and the defendant in its "second defense" states that the parties agreed in the policy as follows: "If, at the time of loss, there shall be any other insurance outstanding in favor of the assured on the same or any part of the same risk, whether valid or not, subject to the conditions or provisions of any sort limiting the liability thereon, this company shall be in all cases entitled to the benefit of such provisions as if fully set forth herein." The answer further states that at the time of loss there was other insurance outstanding in favor of the assured on the risk subject, among other conditions, to the following warranty: "This policy is warranted at not less gross rate of premium and on the same terms and conditions as and to follow the settlements of the New Zealand Insurance Company of New Zealand." Then the answer states that the gross rate of premium on the policy of the New Zealand Insurance Company, (herein referred to as "Z") was 8 per cent., and the gross rate of premium of the policies of the defendant (herein referred to as "H") and the amended (sic?) policy (herein called "Y") containing the above warranty was 5½ per cent. So the policy "H" contains a warranty by reference to policy "Y," which in return refers to the gross rates and terms and conditions of policy "Z." In legal effect the stipulation is that the policy "H" in suit should be void if the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assured had paid or should pay to another company a greater rate for insurance in force at time of loss.

But it is necessary to consider whether the stipulation is a condition which, if broken, defeats the policy, or simply gives the defendant a cause of action for damages. My attention is not called to a decision of the specific question, but I find that the precise question as to existing insurance was considered in Barnard v. Faber, 1 Q. B. 340 (1893), 62 L. J. Q. B. 159, C. A. (1892). The stipulation in that case was as follows: "Warranted to be on same rate, terms, and identical interest as Union Insurance Company £800, and Glasgow and London £700, and to follow their settlements." After loss the defendant disputed liability on the ground that the policy with the Union Insurance Company was not on the same rate and term as the defendant's policy, and that the warranty to that effect had not been fulfilled. On the trial it was held that the warranty was not a condition precedent to the liability. The, Court of Appeal held, three judges writing opinions to the same effect, that the stipulation as to the rate was a condition precedent to the liability of the underwriters under the policy. Lindley, L. J., said: "I cannot help thinking that, the more one looks at the document, the more plainly it comes out that the bargain was: 'We will not insure, except upon the terms that these two offices have done the same, upon the same rate, upon the same terms—whatever they may be—and on the same interest.'" Bowen, L. J., said: "I do not doubt for a moment that it is a condition without which the contract is not to bind." Smith, L. J., said: "When one looks at this clause, the question which one is to ask oneself is this: Whether this clause contains a promise which goes to the root of the transaction, or whether it is merely a collateral stipulation, the nonperformance of which did not avoid the defendant's obligation, but only gave him a right to a cross-action. * * * Now, to state it as shortly as I can, in my judgment there is a stipulation in this contract between the underwriter and assured that the underwriter undertakes to insure, provided he undertakes the same risks which the other two offices have undertaken, which offices he knows, and which he is content to abide by. If the other two offices have not undertaken the same risk, then, in my opinion, it being a condition of this policy that those two offices should have undertaken the same risk, there is no liability by the underwriter in this case."

The answer in the case at bar does not state whether the "Y" and "Z" policies were in existence when the "H" policy was issued. Hence, to sustain the answer, it is necessary to determine whether the same rule would apply if "Y" and "Z" were subsequent to "H." The "H" policy says: "If, at the time of loss, there shall be any other insurance outstanding, * * * this company shall be in all cases entitled to the benefit of such provisions," etc. Hence the "H" policy referred to policies existing at the time of loss, whatever the date of their issue. In case of loss the same must be apportioned to the several outstanding policies, and it was the purpose of the "H" policy to contribute on a basis common to all policies. If defendant got 5½ per cent. for the risk, and the New Zealand Company 8 per cent. for the same, the companies would lose disproportionate sums, as a simple computation will show. So conditions limiting the liability, present in one and absent in another policy, would produce inequality of risk, loss or gain. To avoid all this the defendant stipulated for the benefit of the terms of other policies, and for equality of rate of premium. Thereupon, if the other policies fell, the "H" policy would fall; if they paid the loss, all would lose relatively. I think that such consideration was an important one for the defendant, and that the stipulation was an essential part of the contract, and an inducement to it. Hence it is a condition which, unfulfilled, leaves the policy void. Surely the intention was not that, in case of loss, the assured would pay the additional premium up to the difference of the amount paid another company, and that the action on the stipulation should be for such damages. Rather the stipulation was intended, I think, to assure the defendant as favorable and profitable bargain as other insuring companies should receive, in expectation that the payment of a preferential rate to another company would avoid the policy. It may seem a hard bargain for the assured, but a warranty is inexorable. The stipulation assures the defendant of a status. To get a policy the assured promises what he

would do, and, if he does it not, he is not entitled to the contract secured by the broken promise. Such a promise permits of no latitude and no equity.
The demurrer is overruled, with costs.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, and MILLER, JJ.

Van Iderstine, Badger & Barker, for appellant.
Charles L. Livingston, for respondent.

PER CURIAM. Interlocutory judgment affirmed, with costs, on the opinion of Mr. Justice Thomas at Special Term.

---

## VAN HAAREN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—BRAKEMEN.
　　Where the middle brakeman of a freight train was injured by being thrown therefrom as he was attempting to board the train at his post of duty, the conductor was not negligent in failing to see that all the employés were aboard before starting the train.
　　[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 185.*]
　　Burr and Rich, JJ., dissenting.

Appeal from Trial Term, Nassau County.
Action by Peter H. Van Haaren against the Long Island Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before WOODWARD, JENKS, BURR, RICH, and MILLER, JJ.

W. C. Beecher, for appellant.
Martin T. Manton, for respondent.

MILLER, J. I think that this judgment should be reversed, for errors of the trial court in refusing to charge as requested by the defendant. A brief statement to show the disputed questions of fact is necessary.

The plaintiff alleged in a complaint, verified by his guardian ad litem, that he was in the employ of the defendant as a brakeman and switchman, and that, while attempting to board his train upon returning to it after turning a switch, it was negligently started, and he was thrown under the wheels. His story upon the trial, briefly stated, was that his train was due to start for its day's work from Holban yard, near Jamaica, at 5 o'clock in the morning; that on the morning of May 18, 1907, he reported for work and was directed by the conductor to go with a fellow brakeman to get some fuses, torches, and oil; that, while away from the train to obey that instruction, it left; that he and his fellow workman then took a train for Valley Stream, and walked from there to Far Rockaway, a distance of eight or nine miles, where he arrived between 4 and 4:30 in the afternoon, found his